UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RAFAEL ROJAS-REYES, | ) | NO. 1:16-cr-00123-TWP-DKL-01 |
| HECTOR SAUL CASTRO-AGUIRRE, | ) | -07 |
|    a/k/a Chapo, | ) | |
|    a/k/a Chapito, | ) | |
| JOHN RAMIREZ-PRADO, and | ) | -10 |
| JOSE MANUEL CARRILLO-TREMILLO, | ) | -15 |
|    a/k/a Meche, | ) | |
| | ) | |
|    Defendants, | ) | |

**GOVERNMENT'S TRIAL BRIEF**

The United States of America, by counsel, Josh J. Minkler, United States Attorney for the Southern District of Indiana, and Bradley A. Blackington, Assistant United States Attorney, hereby files this Trial Brief.

**I.  ADMISSION OF EXPERT OPINION TESTIMONY CONCERNING THE MODUS OPERANDI OF THE SINALOA CARTEL**

The government intends to introduce the expert testimony of Joshua Cluff, a Special Agent with the DEA in Phoenix, Arizona. Special Agent Cluff has extensive experience with investigating drug trafficking organizations in general and investigating cases involving the Sinaloa Cartel in particular. (Dkt. 572, Exhibit A.) Special Agent Cluff will testify concerning the existence and *modus operandi* of the Sinaloa Cartel. (*See* Dkt. 572, at 1-3.) Two of the government's witnesses will testify that the charged conspiracy involved the

1

Sinaloa Cartel and that some of the defendants were members of the Sinaloa Cartel.

For the past thirty years, the Seventh Circuit has consistently held that the manner in which drug dealers operate constitutes a proper subject matter for expert testimony. *United States v. Garcia-Avila,* 737 F.3d 484, 488 (7th Cir. 2013); *United States v. Winbush,* 580 F.3d 503, 510-511 (7th Cir. 2009); *United States v. Foster,* 939 F.2d 445, 451 & n. 6 (7th Cir. 1991). The Seventh Circuit has noted that such testimony becomes helpful to a jury because it remains "a reasonable assumption that jurors are not well versed in the behavior of drug dealers." *United States v. Upton,* 512 F.3d 2008 (7th Cir. 2008) (quoting *Foster,* 939 F.2d at 452). In this vein, the Seventh Circuit has consistently allowed the government to introduce expert testimony concerning the *modus operandi* of drug trafficking organizations. *United States v. Mansoori,* 304 F.3d 635 (7th Cir. 2002); *United States v. Cruz-Velasco,* 224 F.3d 654 (7th Cir. 2000); *United States v. Doe,* 149 F.3d 634 (7th Cir. 1998).

In *Mansoori,* an indictment charged members of the Traveling Vice Lords with conspiracy to distribute controlled substances and related offenses. 304 F.3d at 642. The government introduced the testimony of a Chicago police officer, who gave expert opinion testimony about the history, leadership, and operations of the Traveling Vice Lords. *Id.* at 652-53. The officer testified that the Traveling Vice Lords controlled narcotics distribution on the west side of Chicago through a series of distribution loci known as "drug spots." *Id.* at 653. The officer gave opinion testimony identifying several locations controlled by

the Traveling Vice Lords, described how a "drug spot" operated, and recounted disputes between various members of the gang about drug turf. *Id.*

The defendants objected to the officer's expert opinion testimony, arguing that the testimony exceeded the bounds of permissible expert testimony because it simply instructed the jurors that if the defendants associated themselves with the Traveling Vice Lords, then they had joined the charged conspiracy. *Id.* The defendants also argued that the prejudicial impact of the testimony exceeded its probative value and the admission of the testimony thus violated Rule 403 of the Federal Rules of Evidence. *Id.* The defendants argued that because other evidence existed to describe the operation of the charged drug distribution network, the evidence had minimal probative value. *Id.* The defendants argued that the evidence had a substantial prejudicial impact because the only eyewitness testimony concerning the Traveling Vice Lords' operation consisted of former drug dealers with an incentive to cooperate with the government and the jury may improperly consider the officer's opinion testimony as "facts" which bolstered the testimony of these less-than-upstanding witnesses. *Id.* The district court permitted the introduction of this evidence.

The Seventh Circuit upheld the district court's decision on appeal. Initially, the Seventh Circuit noted that the average juror lacks familiarity with the operation of drug traffickers or street gangs. *Id.* at 654. As a result, the officer's testimony supplied the jury with useful background information about the history and structure of the Traveling Vice Lords, along with their

involvement in drug trafficking activity.  *Id.*  Moreover, the officer's testimony did not invite the jury to conclude that mere membership in the Traveling Vice Lords equated to participation in the charged conspiracy.  *Id.*  Finally, since the district court instructed the jury that they did not have to accept the expert's opinion testimony, the Seventh Circuit saw "no real possibility" that the jury could have mistakenly credited the officer's opinion testimony with facts.  *Id.* at 654-55.

In *Doe,* an indictment charged a Nigerian defendant with heroin trafficking charges.  149 F.3d 14 635-36.  The government introduced the testimony of a DEA agent, who gave expert opinion testimony about the common practices of Nigerian drug smugglers.  *Id.* at 636.  The agent testified that Nigerian traffickers commonly smuggle heroin into the United States from Southeast Asia.  *Id.*  The agent testified that the Nigerian traffickers commonly ship heroin to smaller cities because they have a smaller law enforcement presence.  *Id.*  The agent also testified that Nigerian traffickers commonly use the mailing addresses of other individuals to receive imported heroin and use false identities to prevent detection by law enforcement.  *Id.*

The defendant objected to the introduction of this testimony, arguing that the prejudicial impact of the testimony substantially outweighed its probative value in violation of Rule 403 of the Federal Rules of Evidence.  *Id.*  The district court permitted the introduction of this evidence.

The Seventh Circuit found that the opinion testimony became relevant because the agent's explanation of the common practices and *modus operandi*

4

of Nigerian drug dealers allowed the jury to compare that information to the facts of the case and the defendant's behavior. *Id.* at 637. In particular, the Seventh Circuit noted that the government attempted to use the events surrounding the seizure of heroin, the false identities used by the defendant, and the defendant's use of countersurveillance techniques to establish his criminal intent. *Id.* The expert testimony provided a context for the defendant's behavior that permitted the jury to infer that the defendant knew that a package contained heroin. *Id.* The Court noted that little opportunity for prejudice arose because the expert witness did not testify as a fact witness at trial and the defendant had a full opportunity to cross-examine the witness about his opinion testimony. *Id.* Tthe Seventh Circuit also noted that the agent's testimony about Nigerian practices did not invite the jury to find the defendant guilty simply because of his character. *Id.* at 638. Instead of suggesting that the defendant had the propensity to import or distribute drugs because of his character, the testimony merely illuminated the jury about the *modus operandi* of Nigerian importers of Southeast Asian heroin. *Id.* The testimony provided a context for the jury to consider in explaining the defendant's behavior and did not implicate the defendant's character. *Id.* Finally, the testimony did not permit the jury to find the defendant's guilt simply because of his ethnic background. In this regard, the Seventh Circuit noted the following:

> If the only purpose of profile evidence is to support an
> inference of guilt by association, then an objection to

5

> the evidence would be well-founded. For instance, a "profile" that consisted of nothing more than stereotypes about a certain segment of the population would plainly be more prejudicial than probative. As discussed above, however, this was not the thrust of Balbo's testimony about the *modus operandi* of Nigerian drug traffickers, which delved into specifics about the typical routing of the drug, methods of delivery, and efforts to avoid detection by police.

*Id.* at 638.

Like the use of the expert opinion testimony in *Mansoori* and *Doe,* the government seeks to use the expert opinion testimony in this case to supply the jurors with useful background information about the behavior of the Sinaloa Cartel to the *modus operandi* of the Cartel.  The expert opinion testimony will thus serve as background knowledge for the jury through which they can evaluate the trial evidence and the behavior of the defendants.  The testimony will not result in the improper bolstering of the testimony of accomplice witnesses because the Court will properly instruct the jury about its ability to accept or reject the opinion testimony; thus, the jury will not merely accept the agent's opinion testimony as fact and assume the truthfulness of the accomplice witnesses' testimony by extension.   The opinion testimony will not invite the jury to draw aspersions on the defendants' character because the testimony will not suggest that the defendants had the propensity to distribute drugs.  Instead, the testimony will merely educate the jury about the *modus operandi* of the Sinaloa Cartel and provide a context for the jurors to evaluate the defendants' actions.  Finally, the testimony will not invite the jury to find the defendants guilty simply because of their Hispanic

nationality.  The expert witness' testimony will not constitute a "profile" indicating that all Hispanics have joined the Sinaloa Cartel or that all Hispanics distribute controlled substances.  Instead, like the testimony in *Doe,* the expert testimony will involve testimony about the *modus operandi* of the Sinaloa Cartel and "delve[] into specifics about the typical routing of the drug, methods of delivery, and efforts to avoid detection by police."  *Doe,* 149 F.3d at 638.

Because the expert testimony of Special Agent Cluff will closely resemble the expert testimony offered by the government in *Mansoori* and *Doe,* and the government seeks to use Special Agent Cluff's expert testimony for the same purposes as it did in those cases, Special Agent Cluff's testimony will become admissible in the instant case.

## II.     ADMISSION OF OPINION TESTIMONY CONCERNING DRUG CODE LANGUAGE

The government intends to introduce both the expert and lay opinion testimony of Matthew W. Holbrook, a Special Agent with the DEA in Indianapolis.  Special Agent Holbrook will offer expert testimony indicating that during two intercepted telephone conversations, the word "windows" referred to methamphetamine. (Dkt. 572, at 4.)  Special Agent Holbrook will also offer expert testimony indicating that during another intercepted telephone conversation, the words "window" and "notebook" referred to one pound of methamphetamine.  (*Id.*)  Special Agent Holbrook will also offer lay opinion testimony concerning drug code language that occurred in these and other telephone conversations.

Federal law permits a properly qualified DEA agent to provide expert and opinion testimony concerning drug code language. It also permits the admission of lay opinion testimony concerning drug code language. Such a witness may offer both types of opinion testimony in the same trip to the witness stand, although the Seventh Circuit has cautioned courts and prosecutors to take precautionary measures to avoid jury confusion.

This section of the Trial Brief will discuss the use of expert and lay opinion testimony at trial and the precautionary measures that a trial judge and prosecutor should take to avoid jury confusion.

### A. Drug Code Language As Expert Opinion Testimony

Rule 702 of the Federal Rules of Evidence provides that expert opinion testimony becomes admissible where the testimony (a) "will assist the trier of fact to understand the evidence or to determine a fact in issue," (b) the witness is "qualified as an expert by knowledge, skill, experience, training or education," and (c) the testimony is "(1) based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliable to the facts of the case." Fed. R. Evid. 702. Expert opinion testimony involves specialized training or knowledge not possessed by ordinary lay persons. *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002).

Seventh Circuit case law clearly establishes that an agent with suitable qualifications may provide expert testimony concerning the identification and interpretation of drug code language. *United States v. Garrett*, 757 F.3d 560,

8

568-69 (7th Cir. 2014); *United States v. Moreland*, 703 F.3d 976, 983 (7th Cir. 2012); *United States v. Farmer*, 543 F.3d 365 (7th Cir. 2008); *United States v. Ceballos*, 302 F.3d 679, 686-87 (7th Cir. 2002); *United States v. Romero*, 57 F.3d 565, 571 (7th Cir. 1995); *United States v. Hughes*, 970 F.2d 227, 236 (7th Cir. 1992). In *Ceballos*, the government outlined a DEA agent's experience and training. *Ceballos*, 302 F.3d at 686. The district court qualified the agent as an expert and permitted him to interpret drug code language. *Id.* at 686-87; *but see Garrett,* 757 F.3d at 569 (district court permitted agent to provide expert opinion testimony, but did not refer to agent as expert before jury or instruct jury concerning expert testimony). The drug code language used in *Ceballos* involved the use of simple pronouns such as "both," "it," and "them," and proper nouns such as "tickets" and "cars." *Ceballos*, 302 F.3d at 687. The Seventh Circuit ruled that the district court properly qualified the agent as an expert and permitted him to interpret code language. *Id.* at 687 ("tickets," and "cars" code language); *see also United States v. Hankton,* 432 F.3d 779, 786 (7th Cir. 2005) ("ball," "quake," "quarter," "onion," and "zone" code language); *Romero*, 57 F.3d at 570 ("pairs of boots" code language); *Rollins*, 862 F.2d at 1293 ("pairs of boots" code language for cocaine); *United States v. Vega*, 860 F.2d 779, 796 (7th Cir. 1988) ("chickens," "roosters," and "it" code language).

### B. Drug Code Language as Lay Opinion Testimony

Rule 701 of the Federal Rules of Evidence states that lay opinion testimony becomes admissible when the opinions are "(a) rationally based upon a perception of the witness, (b) helpful to a clear understanding of the witness'

testimony or the determination of a fact in issue, and (c) not based upon scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.  The Seventh Circuit has noted that lay opinion testimony typically involves a summary of either first-hand observations or knowledge of the facts of the case.  *Conn*, 297 F.3d at 554.  Lay opinion testimony becomes admissible to help the finder of fact "understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events."  *Id.* at 554 (quoting *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001)).

The Seventh Circuit initially suggested that the identification and interpretation of drug code language constitutes permissible lay opinion testimony in *Conn*, 297 F.3d at 555 n.3.  The *Conn* Court cited a Fifth Circuit opinion for this proposition.  *Id.* (citing *United States v. Miranda*, 248 F.3d 434, 441 (5th Cir. 2001)).  In the cited Fifth Circuit case, a DEA agent participated extensively in the investigation of a drug trafficking organization.  *Miranda*, 248 F.3d at 441.  The DEA agent's activity included engaging in physical surveillance, debriefing cooperating witnesses, and monitoring and reviewing intercepted telephone conversations.  *Id.*  The agent testified at trial and offered lay witness opinion testimony about the interpretation of drug code language.  *Id.*  The Fifth Circuit upheld the agent's testimony, ruling that the agent could offer lay opinion testimony regarding the interpretation of drug code language

because his extensive participation in the investigation allowed him to form opinions concerning the meaning of drug code language. *Id.*

The Seventh Circuit discussed the use of lay opinion testimony by a federal agent to interpret drug code language in *United States v. Rollins*, 544 F.3d 820 (7th Cir. 2008). During the testimony, the prosecutor asked a federal agent about his opinion as to the meaning of several dozen recorded telephone conversations. *Id.* at 830. On one occasion, the prosecutor asked the agent about the meaning of a conversation during which two conspirators indicated that they were going to have a drink at eleven o'clock. *Id.* at 830-31. The agent replied that, based upon physical surveillance conducted in the case, he believed that the conversation involved the conspirators agreeing to meet a truck driven by another conspirator. *Id.* at 831. The district court permitted the testimony and explained as follows:

> … the discussion here is about the words that come about that are unique to the conversations that have occurred throughout this particular alleged conspiracy. It is clear and it has been clear to this Court throughout that these guys are making this up as they go. Sometimes they make it up in each unique conversation. The officer or the agent is testifying based on his having listened to the conversations and based on his impressions, so it is clearly 701…. The testimony is not coming in based on his experience as the law enforcement officer, it is based on his experience only within this conspiracy.

*Id.* at 831. The Seventh Circuit found that the agent had a rational basis for his lay opinion testimony based upon his first-hand perception of the intercepted telephone calls, along with his personal, extensive experience with

11

that particular investigation. *Id.* at 831-32. The agent listened to every intercepted telephone conversation and became familiar with the voices that he heard. *Id.* at 832. Law enforcement surveillance of the conspirators assisted in giving meaning to language used during the recorded conversations and confirmed the accuracy of the agent's interpretation of the conversations. *Id.* The Seventh Circuit also found that the agent's testimony about the meaning of the conversations was helpful to a clear understanding of the intercepted telephone conversations. *Id.* The Seventh Circuit noted that the testimony "assisted the jury in determining several facts in issue, including whether the defendants knowingly and intentionally participated in the charged conspiracy and their roles and extent of their involvement in that conspiracy." *Id.*

The Seventh Circuit again sanctioned the interpretation of drug code language by a federal agent as lay opinion testimony in *United States v. Moreland*, 703 F.3d 976, 983 (7th Cir. 2012) and *United States v. Cheek*, 740 F.3d 440, 447-48 (7th Cir. 2014). Like the agent in *Rollins*, the agents in *Moreland* and *Cheek* provided lay opinion testimony based upon their investigations in the underlying cases. *Id.*

Like the *Rollins*, *Moreland, and Cheek* cases, the government will offer lay opinion testimony concerning the interpretation of drug code language. Like both cases, the agent's opinions will arise from his first-hand perception of the intercepted telephone conversations and his extensive experience with this investigation.

### C. Distinction Between Drug Code Language as Lay Opinion and Expert Opinion Testimony

As the cases cited above make clear, the question of whether a specific interpretation of drug code language by an agent qualifies as expert opinion testimony or lay opinion testimony depends upon the basis for the witness' opinion. If the agent testifies based upon his personal knowledge obtained during the investigation, he testifies as a lay witness under Rule 701 of the Federal Rules of Evidence. *Cheek*, 740 F.3d at 447; *Moreland,* 703 F.3d at 983. If the agent testifies based upon his involvement in other drug investigations, he testifies as an expert witness under Rule 702 of the Federal Rules of Evidence. *Cheek*, 740 F.3d at 447; *Moreland,* 703 F.3d at 983.

### D. Agent in Dual Roles of Lay Witness and Expert Witness

Although recognizing that a witness testifying as both an eyewitness and an expert witness may increase the possibility of jury confusion, the Seventh Circuit has repeatedly sanctioned this practice. *Garrett*, 757 F.3d at 569-70; *Moreland*, 703 F.3d at 983; *United States v. Christian*, 673 F.3d 702, 712 (7th Cir. 2012); *United States v. York,* 572 F.3d 415, 425 (7th Cir. 2009); *Farmer,* 543 F.3d at 370; *United States v. Goodwin,* 496 F.3d 636, 641 (7th Cir. 2007); *Mansoori*, 304 F.3d at 654; *United States v. Lightfoot*, 224 F.3d 586, 589 (7th Cir. 2000); *Foster*, 939 F.2d at 453; *United States v. Solis*, 923 F.2d 548, 551 (7th Cir. 1991).

Different panels of the Seventh Circuit, however, have suggested different methods for addressing the potential of jury confusion. One line of cases

recommends specific precautions that a trial court and a prosecutor should take to minimize the possibility of jury confusion about the nature of a dual witness' testimony. First, the trial court should provide appropriate cautionary instructions to the jury. *York*, 572 F.3d at 425; *Mansoori*, 304 F.3d at 654.[1] In this vein, the trial court should "flag for the jury" when the agent testifies as a fact witness and when the agent testifies as an expert. *York*, 572 F.3d at 426; *see also Christian*, 673 F.3d at 712 ("[t]he jury needs to know when an agent is testifying as an expert and when he is testifying as a fact witness"). Second, the prosecutor should structure his examination of the witness in such a way as to make clear when the witness is offering factual testimony and when the witness is offering expert opinion testimony. *York*, 572 F.3d at 425. For instance, the prosecutor should preface questions pertaining to expert testimony with phrases such as "based upon your experience in crack cocaine investigations…." *Id.* at 426; *Farmer*, 543 F.3d at 371; *see also Christian*, 673 F.3d at 713. Third, the prosecutor should clearly establish the foundation for the witness' expert opinions. *York*, 572 F.3d at 425; *Christian*, 673 F.3d at 713. Fourth, the trial court should permit rigorous cross-examination of the agent's interpretation of the relevant code language. *York*, 572 F.3d at; *Christian*, 673 F.3d at 713; *Foster*, 304 F.3d at 654.

Three years after the *York* opinion and only nine months after the *Christian* opinion, however, a different Seventh Circuit panel viewed the district

---

[1] The government suggests that the Court consider issuing Seventh Circuit Pattern Instruction No. 3.07 at the time of Agent Freyberger's testimony, which concerns the receipt of expert testimony.

court's decision to flag for the jury when the witness testified as an expert witness and when the agent testified as a lay witness as "potentially confusing" and "unnecessary." *Moreland,* 703 F.3d at 983. The *Moreland* Court suggested that the prosecutor should simply ask the witness the basis for his answer to a question (whether the opinion arose from the witness' investigation of the case or whether the opinion arose from the witness' training and experience). *Id.* at 983-84. The *Moreland* Court found that "[u]sing terms like 'lay witness' and 'expert witness' and trying to explain to the jury the difference between the two types of witness is inessential and… ill advised." *Id.* at 984.

Most recently, in a concurring opinion, Judge Easterbrook noted the tension between the *Christian/York* line of cases and the *Moreland* case. After noting that the Seventh Circuit "may need to resolve this intra-circuit conflict in some future case," Judge Easterbrook declined to address the conflict. *United States v. Parkhurst,* 865 F.3d 509, 525 (7th Cir. 2017).

The government believes that the tension between the *Christian/York* line of cases and the *Moreland* case arises from the different methods that a district court may use to instruct the jury about opinion testimony. The government has filed a Motion in Limine asking the Court to designate the expert witnesses as such before the jury. (Dkt. 573.) If the Court grants the Motion in Limine and designates Special Agent Holbrook as an expert witness, the government believes that the Court should follow the practices outlined by the Seventh Circuit in *Christian* and *York* and clearly delineate between when Special Agent Holbrook testifies as an expert witness and when he testifies as a lay witness.

15

If the Court dismisses the Motion in Limine and only refers to Special Agent Holbrook as a witness offering "opinion testimony," the concerns identified in *Christian* and *York* will not arise, and the method of examination suggested in *Moreland* will become appropriate.

**III.   OUT-OF-COURT STATEMENTS MADE BY POLICE OFFICERS OVER POLICE RADIOS DURING SURVEILLANCE**

The government intends to offer evidence of out-of-court statements made by police officers over police radios during the course of physical surveillance activity. While conducting the joint surveillance activity, the police officers communicated over police radios regarding their immediate observations.

The Seventh Circuit has previously held that these statements fall within the present sense impression exception to the hearsay rule. *United States v. Ruiz*, 249 F.3d 643, 646 (7th Cir. 2001); *see* Fed. R. Evid. 803(1). In *Ruiz*, Officer Noel Sanchez of the Chicago Police Department conducted surveillance in the front of an apartment house while Officer Glen Lewellen conducted surveillance in the rear of the apartment house. *Id.* Officer Sanchez could not observe any of the events that Officer Lewellen observed at the rear of the same apartment. *Id.* Officer Lewellen, however, contemporaneously relayed his observations to Officer Sanchez over police radio. *Id.* The district court permitted Officer Sanchez to repeat Officer Lewellen's radio transmissions to him during his trial testimony. *Id.*

On appeal, the Seventh Circuit noted that the present sense impression exception to the hearsay rule applies under the following circumstances:  (1)

the statement describes an event without calculated narration; (2) the speaker personally perceived the event described; and (3) the speaker made the statement while the speaker was perceiving the event or immediately thereafter. *Id.* The Seventh Circuit held that Officer Lewellen's statements to Officer Ruiz met the three requirements for the present sense impression to the hearsay rule, because "he saw Ruiz and what Ruiz did, he repeated his observations to Sanchez, and he did so at the same time as, or shortly after, he made these observations." *Id.* at 647.

In the case at bar, the government will offer testimony of police officers regarding the contemporaneous statements of other police officers concerning their surveillance observations. The government will request the Court to admit these statements into evidence as present sense impressions.

**IV.  SUMMARY VERSUS DEMONSTRATIVE EVIDENCE**

The government intends to offer both summary and demonstrative evidence into evidence in the case at bar. The summary evidence will consist of summaries of cellular site records and financial records. The demonstrative evidence will consist of maps that incorporate information obtained from border crossing records, hotel records, and flight records to show the movement of individuals across the United States during the course of the conspiracy. The government will offer the summary evidence into evidence. The government will only seek to introduce the demonstrative evidence for demonstrative purposes and will not ask to send it out with the jury during deliberations.

17

Federal law distinguishes between summary and demonstrative evidence. Rule 1006 of the Federal Rules of Evidence governs the admission of summary evidence. Rule 1006 allows the proponent of the evidence to use a "summary, chart, or calculation to prove the content of voluminous writings… that cannot be conveniently examined in court."[2] Fed. R. Evid. 1006. The summary chart constitutes substantive evidence and becomes admissible by itself. *United States v. White,* 737 F.3d 1121, 1135 (7th Cir. 2013). The proponent of the evidence does not need to introduce the underlying documents (the voluminous writings) into evidence themselves. *Id.*

Demonstrative evidence, however, consists of a "persuasive, pedagogical tool created and used by a party as part of the adversarial process to persuade the jury." *Baugh ex rel. Baugh v. Cuprum S.A. de C.V.,* 730 F.3d 701, 706 (7th Cir. 2013). Federal courts have held that Rule 611(a) of the Federal Rules of Evidence, which allows the trial court to exercise "control over the mode and order of examining witnesses and presenting evidence," authorizes the introduction of demonstrative evidence. *White,* 737 F.3d at 1135. Demonstrative evidence only serves to help the jury understand previously admitted evidence. *Id.* at 707. The proponent of this type of evidence may use the exhibit as a tool to "persuade the jury to see the evidence in a certain light favorable to the advocate's client." *Id.* (citing *United States v. Bray,* 139 F.3d 1104, 1111-12 (6th Cir. 1998). Because of the one-sided nature of

---

[2] Rule 1006 also requires the proponent of the summary evidence to make the original evidence available for examination or copying. The government complied with this requirement by disclosing the cellular site records and financial records in electronic format in 2017.

demonstrative evidence, it does not become admitted as substantive evidence and thus should not become available to the jury during deliberations. *Baugh,* 730 F.3d at 708. In most cases, the trial court should also provide a limiting instruction concerning the proper purpose of demonstrative evidence. *United States v. Pree,* 408 F.3d 855, 872 (7th Cir. 2005).

    The government will offer both summary and demonstrative evidence in this case. The government will request the Court to admit the summary evidence into evidence and to use the demonstrative evidence only for limited purposes.

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have served a copy of the foregoing electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/<u>*Bradley A. Blackington*</u><br>
Bradley A. Blackington<br>
Senior Litigation Counsel

Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis, Indiana 46204
Telephone:  317 226-3333